## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

### I. INTRODUCTION

I, **DAVID C. SCULLION**, Special Agent of the Federal Bureau of Investigation, United States Department of Justice, having been duly sworn, do hereby depose and states as follows:

1. I am a Special Agent with the Federal Bureau of Investigation (FBI). As such, I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, § 1951.

2. I have served as an FBI Special Agent (SA) since September 2007.[1] During that time, I have investigated federal criminal violations related to drug trafficking and organized crime matters, terrorism, health care fraud, and violent crimes, as well as a number of other criminal offenses. In addition, I have had the opportunity to work with several other FBI agents and other law enforcement agents and officers of varying experience levels, who have also investigated many of these same violations, including United States Code, Title 18, § 1951; Hobbs Act, Interference with commerce by threats or violence.

3. The facts set forth in this affidavit are based on the following: my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; interviews of witnesses; my review of records related to this investigation; communications with others who have knowledge of the

---

[1] I was also previously employed from 2002 to 2007 as a Deputy Sheriff, Police Services Unit, for the County of York, Maine.

events and circumstances described herein; and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for an arrest warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation. This affidavit is in support of a criminal complaint, charging GRANT with violating United States Code, Title 18, § 1951; Hobbs Act, Interference with commerce by threats or violence, for robbing the Big Apple in Augusta, Maine.

## II. APPLICABLE LAW

4. Title 18 U.S. Code §1951(a): Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

## III. STATEMENT OF PROBABLE CAUSE

5. Based on information I have gathered in the course of my investigation, I have probable cause to believe and I do believe that Barry Edward GRANT (GRANT), with a date of Birth in 1981, and a social security number and FBI Number known to this agent, violated the Hobbs Act by robbing the Big Apple convenience store at 36 Stone Street, Augusta, Maine, on or about February 25, 2019, effectively disrupting commerce, and resulting in financial loss to the business.

6. At approximately 7:27 p.m., on February 25, 2019, a Big Apple employee (herein after the "clerk") reported being robbed at knife point. According to responding officers, the clerk was crying and shaking intensely and reported to them that she was having a panic attack. The clerk provided her statement which was documented by Officer Gregory McCarthy, the responding police officer from the Augusta Police Department. In her statement, the clerk described the suspect as dressed all in black from the waist up, and stated that she could not see his face as it was covered. She did say that the suspect's nose was very memorable as it was fairly large, and became visible for a moment when the mask slipped down.

7. I have personally reviewed security footage from the incident described by the Big Apple clerk. The security footage shows the suspect enter the store at approximately 7:12:27 p.m. There is a strip of measuring tape near the entrance. Officer McCarthy, who responded on scene, made a report in which he describes the suspect to be between 5'10 and 6'00 tall based on his review of the video.

8. The video shows an individual ("the suspect") enter the store, go up to the counter, and drop a demand note on the counter top, while holding a knife with a silver blade in his right hand. The suspect's exposed skin appears to be that of a Caucasian. The suspect pushes and turns the paper around with his left hand at approximately 7:12:34 p.m., so that it is facing the teller, and waits for her. At approximately 7:12:44 p.m. the suspect is seen waiving the knife at the teller at waist level. The clerk takes money from the drawer and hands it to the suspect, who then leaves at approximately 7:13:10 p.m. The suspect is clearly wearing a black hooded sweatshirt with no zippers or markings, with the exception of a small white insignia on the back of the sweatshirt just under the hood. The store manager later provided Augusta PD with a print-out showing that $218 was taken from the register drawer.

9. The suspect left the demand note on the countertop as he fled the store. It was collected as evidence by the Augusta Police Department and processed for fingerprints by the Maine State Police Crime Laboratory. The note states, "Give Me All The Money No one gets hurt." The note is written on a piece of paper that was ripped in half, and on the back side of the paper you can see that it has Hammond Lumber in large red letters on it.

10. The Maine State Crime Laboratory, by comparing fingerprints found on the note to GRANT's prints that were provided by AFIS of the Maine State Bureau of Identification, concluded that GRANT left a print of his left middle finger on the note. This was the only discernable print found on the note. I know from my training and experience that AFIS collects data, including electronic copies of fingerprint cards, resulting from arrests. A handwriting analysis of the note and GRANT's handwriting is pending analysis by the FBI Questioned Documents Unit.

11. I have reviewed motor vehicle records for GRANT, and found that his most recent driver's license lists him as 5 foot 10 inches tall. His driver's license photo shows that he is Caucasian, and has what I would describe as a large, distinct-looking nose.

12. I conducted a criminal history check on GRANT, and discerned that he has a history of arrests and convictions in the State of Maine, including a 2009 felony arrest for habitual operating after suspension. GRANT also has arrests and convictions for multiple assaults, thefts and other misdemeanor offenses.

13. GRANT is also a suspect in other robberies in Augusta, Maine, in which an individual with similar clothing conducts robberies at knife point. The incidents include a July 17, 2019 robbery in which a bicycle GRANT was seen riding 3 days earlier was found outside a

store robbed at knife point and $685 was taken, and another knife point robbery on about July 20, 2019, in which the suspect was wearing a similar sweatshirt with duct tape on the back where the logo was seen in the February 2019 video described above, and $500 was taken. On July 23, 2019, GRANT was arrested by Augusta Police following another knife-point robbery. In his possession was the knife used in the robbery, and officers recovered $515.

## IV. CONCLUSION

14. Based on the facts set forth above, your affiant requests that the Court issue a criminal complaint charging Barry GRANT with violating United States Code, Title 18, § 1951; Hobbs Act Violation, Interference with commerce by threats or violence.

_____
David C. Scullion
Special Agent
Federal Bureau of Investigation

Subscribed to and sworn before me this 25th day of July, 2019.

_____
United States Magistrate Judge

5